# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 11 |
| ) | |
| Associated Oral Specialties, Inc., ) | CASE NO. 19-50715-pmb |
| ) | |
| Debtor. ) | |

## DEBTOR'S PLAN OF REORGANIZATION

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Associated Oral Specialties, Inc. (the "Debtor") from future income of the business.

This Plan provides for 6 (six) classes of secured claims; one class of unsecured creditors; and one class of equity security holders. Unsecured creditors holding allowed claims will receive distributions. This Plan also provides for the payment of administrative claims in full as of the effective date of this Plan.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### DEFINITIONS

1.1 "Administrative Bar Date" means the first Business Day thirty (30) days after the Effective Date, and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, except as otherwise provided in the Plan.

1.2 "Administrative Claim" means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request for payment or approval) of which is timely filed by the Administrative Bar Date, and any fees and charges assessed against the estate under 28 U.S.C. § 1930.

1.3 "Allowed Claim" means a Claim against the Debtor(s) (a) which is listed in the Debtor's Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed; or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.4 "Assets" means all property, real or personal, in which the Debtor(s) has/have an interest.
1.5 "Avoidance Actions" means proceedings commenced under Chapter 5 of the Bankruptcy Code.

1.6 "Ballot" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.7 "Bankruptcy Code" means Title 11 of the United States Code.

1.8 "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, or if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.9 "Bankruptcy Rules" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.10 "Bar Date" means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor.

1.11 "Business Day" means any day except Saturday, Sunday, or other day on which commercial banks in the State of Georgia are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.12 "Case" means the case commenced under Chapter 11 of the Code pending in the Bankruptcy Court, and bearing Case No. 19-50715-pmb.

1.13 "Cash" means United States currency, drafts, checks, deposit accounts or other cash equivalents.

1.14 "Claim" means a claim as defined in § 101(5) of the Code.

1.15 "Claimant" means a Person holding a Claim against the Debtor.

1.16 "Class" means each class of Claims or Interests established and set forth in Article II of the Plan.

1.17 "Collateral" means any property or interest in property of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.18 "Confirmation" means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.19 "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.20 "Confirmation Hearing" means the hearing under § 1128 of the Code scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan as it may be continued from time to time.

1.21 "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

1.22 "Creditor" means the holder of a Claim.
1.23 "Days" shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.24 "Debtor" means Associated Oral Specialties, Inc..

1.25 "Disclosure Statement" means the Disclosure Statement filed or to be filed by Debtor in connection with this Plan, as modified, if applicable.

1.26 "Disputed Claim" means a Claim:
    (a) which is listed as disputed or contingent in the Debtors' Schedules as filed or as amended, or
    (b) which is listed as disputed under any provision of this Plan, or
    (c) as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.27 "Effective Date" means the date that is 60 days after the Confirmation Order becomes a Final Order.

1.28 "Equipment" means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.29 "Exempt Property" means property claimed as exempt on Schedule C (as amended, if applicable) filed by the Debtor, unless such exemption has been disallowed by the Bankruptcy Court upon timely objection.

1.30 "Estate" means the bankruptcy estate(s) of the Debtor. The use of the term in the singular does not mean that the estates are substantively consolidated.

1.31 "Executory Contracts" means all contracts, including unexpired leases, to which the Debtor was/were a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtor.

1.32 "Final Decree" means the Final Order of the Bankruptcy Court that closes and dismisses the Case.

1.33 "Final Order" means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.34 "Inventory" means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.35 "Lien" has the meaning set forth in §101(37) of the Code.

1.35A "Material Default" of the Debtor shall occur if (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 30 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 30 calendar days after the date of service of the notice of default either: (i) to cure

the default; or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.36 "Miscellaneous Assets" means Assets other than Inventory, Equipment, Accounts Receivable or Avoidance Actions.

1.37 "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government, or any political subdivision thereof, or other legal entity.

1.38 "Petition Date" means January 14, 2019, the date on which the voluntary petition for relief under Chapter 11 of the Code was filed by the Debtor.

1.39 "Plan" means this Plan, as it may be amended from time to time.

1.40 "Priority Claim" means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim or a Professional Claim.

1.41 "Priority Tax Claim" means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.42 "Professional" means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.43 "Professional Claim" means any Claim for compensation or reimbursement of a Professional arising at any time before the Confirmation Date.

1.44 "Proof of Claim" means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.45 "Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.46 "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.47 "Secured Claim" means any Claim, debt, or demand against the Debtor as determined in accordance with § 506(a) of the Code which is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor, but only to the extent of the value of the Collateral as of the Confirmation Hearing.

1.48 "Unexpired Lease" means a lease of personal or realty which had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.49 "Unliquidated Claim" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.50 "Unsecured Claim" means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01 All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)). **THERE ARE NO CLAIMS ENTITLED TO PRIORITY UNDER § 507 OF THE CODE**

2.02 Classes 1-6. The claims of Classes 1-6, to the extent allowed as a secured claim under § 506 of the Code.

2.03 Class 7 All unsecured claims allowed under § 502 of the Code.

2.04 Class 8 Equity interests of the Debtor.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

**3.01 Unclassified Claims.** Under section § 1123(a)(1), administrative expense claims are not in classes.

**3.02 Administrative Expense Claims.** Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

**3.03 Priority Tax Claims.** Each holder of a priority tax claim, if one exists, will be paid upon terms consistent with § 1129(a)(9)(C) of the Code. The IRS has claimed a $24,212.14 priority claim, though the Debtor disputes the validity of the IRS' claim. If the IRS' claim is found to be valid, it will be paid in equal monthly installments upon terms consistent with § 1129(a)(9)(C).

**3.04 United States Trustee Fees.** All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

**Class 1 (Citizens Bank)**: Class 1 consists of the secured claim of Citizens Bank ("Citizens Bank"). Upon information and belief, Citizens Bank holds a first priority security interest in all equipment, cash and personal property of the Debtor ("Class 1 Collateral"). Citizens Bank has filed a proof of claim for $872,738.16. Debtor values the Class 1 Collateral at $872,738.16 (the "Secured

Class 1 Claim"). The Debtor will make monthly interest payments to Citizens Bank in the amount of $ 6,000 for months one (1) through twelve (12). Debtor's payments shall increase to $ 8,467 for months thirteen (13) through ninety-five (95) based upon a 15-year amortization period. The Debtor shall pay a balloon payment of $ $686,585 on the 30th day following the 95th month. The Secured Class 1 Claim is being paid at an annual interest rate of 8.25% (fixed). Any payment made to Citizens Bank post-petition and prior to the Effective Date shall be applied pursuant to the loan documents, and all provisions of the underlying loan documents, except as to payment terms, shall remain in full force and effect until the Secured Class 1 Claim is paid in full. Debtor shall continue making the pre-confirmation adequate protection payments until the time the first payment is due under the Plan. Any payments in excess of the aforementioned monthly payment after the Effective Date shall be applied to the principal balance of the Secured Class 1 Claim. Upon payment default and failure to cure, the parties' rights will be governed by the underlying loan documents.

Citizens Bank's rights and remedies in any guaranty agreements entered into with non-debtor parties prior to the Petition Date shall remain in full force and effect and are not released or discharged. As long as Debtor is current on its Class 1 payments, Citizens Bank shall not commence any collection activity against guarantors.

Citizens Bank shall retain its lien on the Class 1 Collateral and the lien shall be valid and fully enforceable to the same validity, extent and priority as existed on the Filing Date. Upon receipt of the then outstanding balance of the Secured Class 1 Claim, Citizens Bank (or its successors or assigns) shall release its lien on the Class 1 Collateral. The Claim of the Class 1 Lender is impaired by the Plan and the Holder of Class 1 Claim is entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserve the right to object to any and all claims

**Class 2 (Dedicated Funding)** Class 2 consists of the secured claim of Dedicated Funding ("Dedicated Funding"), a/k/a Territorial Bank of Somoa. Upon information and belief, Dedicated Funding holds a first priority security interest in certain medical equipment in use by the Debtor (the "Class 2 Collateral"). Dedicated Funding has filed a proof of claim for $160,642.07 (the "Secured Class 2 Claim"). Debtor will treat Dedicated Funding's claim as fully secured. The Debtor will make monthly interest payments to Dedicated Funding in the amount of $ 703 for months one (1) through twenty-four (24). Debtor's payments shall increase to $ 1,726 for months twenty-five (25) through ninety (95) based upon a 15-year amortization period. The Debtor shall pay a balloon payment of $129,990.74 on the 30th day following the 95th month. The Secured Class 2 Claim is being paid at an annual interest rate of 5.25% (fixed). If Dedicated Funding's proof of claim is subsequently reduced, the monthly payments shall be based on the new secured claim amount. Any payment made to Dedicated Funding post-petition and prior to the Effective Date shall be applied pursuant to the loan documents, and all provisions of the underlying loan documents, except as to payment terms, shall remain in full force and effect until the Secured Class 2 Claim is paid in full. Debtor shall continue making the pre-confirmation adequate protection payments until the time the first payment is due under the Plan. Any payments in excess of the aforementioned monthly payment after the Effective Date shall be applied to the principal balance of the Secured Class 2 Claim. Upon payment default and failure to cure, the parties' rights will be governed by the underlying loan documents.

Dedicated Funding's rights and remedies in any guaranty agreements entered into with non-debtor parties prior to the Petition Date shall remain in full force and effect and are not released or discharged. As long as Debtor is current on its Class 2 payments, Dedicated Funding shall not commence any collection activity against guarantors.

Dedicated Funding shall retain its lien on the Class 2 Collateral and the lien shall be valid and fully enforceable to the same validity, extent and priority as existed on the Filing Date. Upon receipt of the then outstanding balance of the Secured Class 2 Claim, Dedicated Funding (or its successors or assigns) shall release its lien on the Class 2 Collateral. The Claim of the Class 2 Lender is impaired by

the Plan and the Holder of Class 2 Claim is entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserve the right to object to any and all claims

**Class 3 (High Speed Capital)** Class 3 consists of the secured claim of High Speed Capital ("High Speed Capital"). Upon information and belief, High Speed Capital asserts a junior claim in Debtor's accounts receivable (the "Class 3 Collateral"). High Speed Capital has failed to file a UCC-1 Financing Statement evidencing its asserted secured claim. Moreover, any security interest asserted by High Speed Capital is junior in priority to the liens of the Class 1 and 2 Secured Claimants. As a result, there is no equity for High Speed Capital's secured claim to attach, and Debtor will treat High Speed Capital's claim as an unsecured claim in Class 7. Upon confirmation of the Plan, the lien shall be void unless an Order of the Court provides for such relief prior to the Confirmation Date.
  Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserve the right to object to any and all claims.

**Class 4 (Lendini)** Class 4 consists of the secured claim of Lendini, a/k/a Funding Metrics ("Lendini"). Upon information and belief, Lendini asserts a junior claim in Debtor's accounts receivable (the "Class 4 Collateral"). Any security interest asserted by Lendini is junior in priority to the liens of the Class 1 and 2 Secured Claimants. As a result, there is no equity for Lendini's secured claim to attach, and Debtor will treat Lendini's claim as an unsecured claim in Class 7. Upon confirmation of the Plan, the lien shall be void unless an Order of the Court provides for such relief prior to the Confirmation Date.
  Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserve the right to object to any and all claims. The Claim of the Class 4 Lender is impaired by the Plan and the Holder of Class 4 Claims is entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserve the right to object to any and all claims.

**Class 5 (Fundworks)** Class 5 consists of the secured claim of The Fundworks, LLC ("Fundworks"). Upon information and belief, Fundworks asserts a junior claim in Debtor's accounts receivable (the "Class 5 Collateral"). Any security interest asserted by Fundworks is junior in priority to the liens of the Class 1 and 2 Secured Claimants. As a result, there is no equity for Fundworks's secured claim to attach, and Debtor will treat Fundworks's claim as an unsecured claim in Class 7. Upon confirmation of the Plan, the lien shall be void unless an Order of the Court provides for such relief prior to the Confirmation Date.
  Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserve the right to object to any and all claims. The Claim of the Class 5 Lender is impaired by the Plan and the Holder of Class 5 Claims is entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserve the right to object to any and all claims.

**Class 6 (Pawnee Leasing)** Class 6 consists of the secured claim of Pawnee Leasing ("Pawnee Leasing"). Upon information and belief, Pawnee Leasing holds a first priority security interest in certain medical equipment in use by the Debtor (the "Class 6 Collateral"). Pawnee Leasing has filed a proof of claim for $71,100.56 (the "Secured Class 6 Claim"). Debtor will treat Pawnee Leasing's claim as fully secured. The Debtor will make monthly interest payments to Pawnee Leasing in the amount of $333.00 for months one (1) through twenty-four (24). Debtor's payments shall increase to $429.84 for months twenty-five (25) through ninety (95) based upon a 15-year amortization period. The Debtor shall pay a balloon payment of $59,042.29 on the 30th day following the 95th month. The Secured Class

6 Claim is being paid at an annual interest rate of 5.25% (fixed). If Pawnee Leasing's proof of claim is subsequently reduced, the monthly payments shall be based on the new secured claim amount. Any payment made to Pawnee Leasing post-petition and prior to the Effective Date shall be applied pursuant to the loan documents, and all provisions of the underlying loan documents, except as to payment terms, shall remain in full force and effect until the Secured Class 6 Claim is paid in full. Debtor shall continue making the pre-confirmation adequate protection payments until the time the first payment is due under the Plan. Any payments in excess of the aforementioned monthly payment after the Effective Date shall be applied to the principal balance of the Secured Class 6 Claim. Upon payment default and failure to cure, the parties' rights will be governed by the underlying loan documents.

Pawnee Leasing's rights and remedies in any guaranty agreements entered into with non-debtor parties prior to the Petition Date shall remain in full force and effect and are not released or discharged. As long as Debtor is current on its Class 6 payments, Pawnee Leasing shall not commence any collection activity against guarantors.

In its sole discretion the Class 6 claimant may elect to receive a one-time lump sum payment equal to 15% of its claim on the 37th month following the effective date as payment in full of its claim.

Pawnee Leasing shall retain its lien on the Class 6 Collateral and the lien shall be valid and fully enforceable to the same validity, extent and priority as existed on the Filing Date. Upon receipt of the then outstanding balance of the Secured Class 6 Claim, Pawnee Leasing (or its successors or assigns) shall release its lien on the Class 6 Collateral. The Claim of the Class 6 Lender is impaired by the Plan and the Holder of Class 6 Claim is entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserve the right to object to any and all claims

**Class 7 (General Unsecured Claims).** Class 7 consists of all non-insider general unsecured creditors of the Debtor, including all Secured Claimants' deficiency claims that are reclassified as Class 7 claimants. Holders of Class 7 claims shall be paid a pro rata share of $ 162,520. Debtor shall pay 16 bi-annual payments of $ 4,063 beginning 6 months following the Effective Date. Debtor shall make a balloon payment of $ 97,512 on the October 1, 2027. Payments on Class 7 claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court. Any check mailed to the proper address and returned by the post office as undeliverable, or not deposited within 120 days, shall be void and the funds may be retained by the Debtor. This class is impaired and entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of any claim. Debtor reserves the right to object to any and all claims .

Class 7 Claimants may in their sole discretion choose to accept a one-time cash payment equal to the lesser of 50% of their allowed claim(s) or $5,000 payable sixty (60) days after the Effective Date of the plan as payment in full of their claim(s)

**Class 8 (Equity Security Holders).** Class 8 consists of the Equity Holders of the Debtor. Each equity security holder will retain its/his Interest in the reorganized Debtor as such Interest existed as of the Petition Date. This class is not impaired and is not eligible to vote on the Plan.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes the following executory contracts and/or unexpired leases effective upon the effective date of this Plan: Any lease previously assumed pursuant to an Order of this Court, including the lease with LHT North Atlanta, LLC for space in 5671 Peachtree Dunwoody Road N.E., Suite 420, Atlanta, GA 30342.

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 60 days (60) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    Parties Responsible for Implementation of the Plan. Upon confirmation, Debtor will be charged with administration of the Case. Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan. Debtor will file all post-confirmation reports required by the United States Trustee's office. Debtor will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation, the completion of the claims analysis and objection process, and following entry of Final Orders in all Bankruptcy Court litigation. Debtor may be authorized to reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to Debtor. The fee associated with the Debtor's motion to reopen Debtor's case may be waived, and Debtor may not be responsible for payment of such to the Clerk of Court for the Bankruptcy Court of the Northern District of Georgia or otherwise.

Dr. Wakefield will continue to be the President and managing shareholder of Debtor. He will not take any compensation from the Debtor.

7.02    Source of Cash Distributions. The source of funds for payments pursuant to the Plan will be the income from the Debtor and personal contributions from Dr. Freddie Wakefield and payments from Milestone Dentistry. The Plan provides that Debtor shall act as the Disbursing Agent to make payments under the Plan unless Debtor appoints some other entity to do so. Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

7.03     Preservation of Causes of Action. In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action). The failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserve all causes of actions for breach of any former or now existing agreement or otherwise. Any failure by Debtor to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. Debtor hereby expressly reserves the right to declare any such other default or event of default and to take such other action as Debtor may be entitled to applicable law. No delay on the part of Debtor in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. The Disclosure Statement and Plan are filed with a full reservation of rights.

7.04     Effectuating Documents, Further Transactions. Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

7.05     Further Authorization. Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

7.06     Liabilities of Debtor. Debtor will not have any liabilities except those expressly assumed under the Plan. Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01     <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02     <u>Effective Date of Plan</u>.  The effective date of this Plan is the 60th business day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03     <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04     <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Georgia govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07    Vesting of Debtor's Assets: Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan. As of the Effective Date, Debtor may use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

8.08    Revocation: The Debtor reserves the right to revoke, and withdraw the Plan prior to Confirmation. If the Debtor revokes and/or withdraw the Plan, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor, or any other person or entity or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtor.

8.09    Liabilities: Debtor will not have any liabilities except those expressly assumed under the Plan. Debtor will be responsible for all ongoing expenses and payments due and owing under the confirmed Plan.

8.10    Plan Controls: In the event, and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other agreement or instrument required or contemplated to be executed by the Debtor or any other entity pursuant to the Plan, the provisions of the Plan shall control and take precedence. In the event of any inconsistency between any provision of any of the foregoing documents and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

## ARTICLE IX
## DISCHARGE

9.01    Discharge.  On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:  (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

## ARTICLE X
## OTHER PROVISIONS- JURISDICTION

The Court shall retain jurisdiction over the parties to, and the subject matter of, this Plan and all matters related thereto until the Plan has been fully consummated and the case closed, or until the case is dismissed or converted to another chapter of the Code.

Respectfully submitted this 17th day of July, 2019,

By: /s/ Freddie Wakefield for Associated Oral Specialties, Inc..
The Plan Proponent

By: /s/ Will Geer
Attorney for the Plan Proponent